**John NARAYAN, Plaintiff,**

v.

**David N. ILCHERT, Immigration and Naturalization Service, Defendants.**

No. C 92–3078 SC.

United States District Court, N.D. California.

Aug. 25, 1992.

William R. Gardner, San Francisco, Cal., for plaintiff.

John A. Mendez, U.S. Atty., Alberto E. Gonzalez, Sp. Asst. U.S. Atty., San Francisco, Cal., for defendants.

## ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS

CONTI, District Judge.

## I. INTRODUCTION

Petitioner John Narayan ("Narayan") seeks a writ of habeas corpus barring the Immigration and Naturalization Service ("INS") from deporting him to Fiji, pending a decision by the Board of Immigration Appeals ("BIA") on his motion to reopen deportation proceedings.

## II. FACTS

Narayan is a native and citizen of Fiji, and is of Indian descent. He entered the United States as a visitor on March 29, 1986, and was authorized to remain until September 28, 1986. He was accompanied by his wife and one child. Narayan has been in the United States ever since.

Narayan began working without authorization in August 1986. The INS subsequently initiated deportation proceedings, and Narayan first appeared before an Immigration Judge ("IJ") in November, 1987. During those proceedings, Narayan applied for political asylum, based upon the hostile

climate toward Fijians of Indian descent.[1] After a hearing on the merits, the IJ denied the application, finding that petitioner had not been subject to persecution in Fiji. Accordingly, the IJ on May 13, 1988 ordered that Narayan could have thirty days to depart the country voluntarily; should he fail to do so, he would be subject to immediate deportation without further notice.

Narayan appealed the decision of the IJ to the BIA, which affirmed the decision denying asylum on November 20, 1990. The BIA again gave Narayan 30 days in which to depart voluntarily, or else be subject to deportation in accord with the IJ's order.

After the thirty-day period had run, the INS on December 27, 1990 issued a notice to appear for deportation on January 22, 1991. Narayan on January 18, 1991 appealed to the Ninth Circuit; that appeal stayed the deportation automatically. The Ninth Circuit affirmed the decision yet again on April 9, 1992. *Narayan v. INS,* 959 F.2d 241.

On June 18, 1992, Narayan filed a motion to reopen his case with the BIA. That motion has not been ruled upon, and the INS filed its opposition on August 7, 1992. On August 4, 1992, Narayan was arrested and taken into custody by the INS. He was subsequently released on bond of $5,000. Narayan sought a stay of deportation from the BIA, which denied his application. He then filed the instant petition for a writ of habeas corpus and for an order barring the INS from deporting him pending resolution of his motion to reopen.

## III. DISCUSSION

Narayan presents two arguments to this court in support of his motion. First, he argues, it was arbitrary and capricious for the BIA to deny his application for a stay without issuing a reasoned opinion. Second, he argues, the INS abused its discretion in failing to follow its usual procedures in deporting him.

The INS, in turn, disputes Narayan's arguments. In addition, they argue that Narayan has failed to exhaust his administrative remedies, and that he has failed to join an indispensable party (the BIA).

### A. *Exhaustion of Remedies.*

The INS argues that Narayan has failed to exhaust administrative remedies by choosing to seek a stay directly from the BIA, rather than from the District Director. However, the INS cites no authority for the proposition that an alien must seek a stay in all of the alternative administrative fora available to him. The statutory language cited, 8 U.S.C. § 1105a(c), is inapposite, as it governs review of final orders of deportation.[2] Here, however, Narayan is challenging not a final order, but a discretionary denial of a stay by the BIA. No further administrative relief from that denial is available, regardless of whether Narayan could have initially sought a stay elsewhere. *See Ajurulloski v. INS,* 688 F.Supp. 1272 (N.D.Ill.1988). As such, the matter is properly before the court.

### B. *Failure to Join BIA.*

The INS also argues that Narayan's failure to join the BIA is fatal to his motion. However, this is not an appeal of a BIA decision. In fact, no such appeal could lie in this court, as exclusive jurisdiction for such appeals is in the courts of appeals. 8 U.S.C. § 1105a(a). Rather, this is a habeas corpus proceeding. Narayan is

---

**1.** The political climate in Fiji is currently hostile to Fijians of Indian descent, despite the fact that they comprise 50% of the population. As a result of a 1987 coup by native Fijian forces and the subsequent enactment in 1990 of a new constitution, Indo–Fijians are relegated in many ways to the status of second class citizens. The native Fijian minority is guaranteed a majority of seats in Parliament, and the parliament has wide power to overrule guarantees of basic freedoms. In addition, racial violence is widespread, and frequently ignored or condoned by the authorities. *See* 1990 Country Reports on Human Rights Practices at 882–891. All of this, however, occurred *after* Narayan left the country.

**2.** The exhaustion provision provides in pertinent part: "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws...." 8 U.S.C. § 1105a(c).

in the custody of the INS[3], not the BIA, and it is the INS that Narayan seeks to prevent from deporting him. As the BIA does not have Narayan "in custody," they are not a proper—much less a necessary—party to a habeas corpus petition.

### C. *BIA's Denial of Stay.*

 Narayan claims that the BIA, by failing to issue a lengthy opinion justifying its denial of the request for a stay, abused its discretion.[4] However, he cites no authority for the proposition that the BIA must issue any written explanation for such a discretionary and interim decision. Rather, he cites the case of *Bertrand v. Sava*, 684 F.2d 204, 213 (2d Cir.1982) for the proposition that "[w]here the BIA's discretion is exercised 'irrationally or in bad faith' it is an abuse of discretion." Narayan miscites this case; in fact, it concerned an unadmitted alien seeking parole, and reversed a district court finding that the District Director (*not* the BIA; *see infra*) had abused his discretion by failing to adequately justify his denial. In point of fact, the *entire* sentence from which Narayan quotes reads as follows: "The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one *and rests at all times on the unadmitted alien challenging denial of parole.*" *Id.* (emphasis added)[5]

Narayan can perhaps be excused for misciting *Bertrand;* in so doing, he is merely following the lead of the Court of Appeals for the Second Circuit in *Anderson v. McElroy*, 953 F.2d 803 (2d Cir.1992), the other case upon which Narayan relies. That opinion similarly miscites and misconstrues *Bertrand.*[6] More importantly,

*Anderson* represents a wildly different factual scenario. In that case, the petitioner had become eligible for permanent residency (due to seven years' continuous residency, pursuant to 8 U.S.C. § 1182(c)) between the time of his deportation hearing and his motion to reopen. Accordingly, the INS, rather than oppose Anderson's motion to reopen, joined him in requesting that the BIA vacate the IJ's deportation decision and remand for a new hearing in light of the changed circumstances. Despite the INS' request and the clear basis for reopening, the BIA refused to stay the deportation, stating simply that "no evidence has been presented to establish that respondent is prima facie eligible for relief." *Anderson* at 805.

It is in this context, where the petitioner had met his initial burden of presenting new facts that warranted reopening his case, that the *Anderson* court found an abuse of discretion; it was not the BIA's failure to explain *per se* that was an abuse of discretion, but its failure to explain in the face of compelling reasons to stay the deportation.

No such prima facie case has been made by Narayan. The IJ, the BIA, and the Ninth Circuit have all found him to be ineligible for asylum. More importantly, they all based that determination in large part on the fact that Narayan had not been subject to persecution in the past, and that he did not have a reasonable and well-founded fear of future persecution should he return to Fiji.

Nothing new has been presented to the BIA to alter this result. Narayan argues that his wife and child have since applied for asylum, and that the unpublished case

---

**3.** That Narayan has been released on bond is immaterial. For habeas corpus purposes, persons released on bond or on their own recognizance are "in custody." *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

**4.** In reviewing the BIA's denial of a stay, a district court applies an abuse of discretion standard. *See, e.g., Blancada v. Turnage*, 891 F.2d 688, 689–90 (9th Cir.1989).

**5.** Narayan also cites *Wong Wing Hang v. INS*, 360 F.2d 715, 719 (2d Cir.1966) for this proposition. That case, however, involved an application for suspension of deportation. There, unlike here, a final, appealable order was at issue; more importantly, the BIA's denial was upheld, and the court merely stated in dictum that an order utterly devoid of rational basis would be struck down.

**6.** In fact, the language of Narayan's brief is lifted verbatim from *Anderson*. *Anderson* at 806.

of Mr. Singh [7] somehow changes his own status. Neither contention is likely to lead the BIA to reopen his case.[8] The fact that his relatives also seek asylum does not alter Narayan's chances of persecution in Fiji. As for Mr. Singh, his case involved a factual finding of extensive persecution in Fiji prior to his escape, and asylum was granted based upon that persecution. In Narayan's case, there is an express finding of no persecution, and the denial of asylum is based almost entirely on that finding. Incredibly, Narayan states in his motion to reopen that in his case "[t]he only minor difference is that the judge did not find past persecution." This court is at a loss to imagine what Narayan would describe as a major difference.

■ Whatever the merits of Narayan's motion to reopen, the BIA is under no obligation to explain its denial of a stay pending its decision to reopen or not. The procedure for discretionary stays pending motions to reopen is governed not by statute, but by regulation. 8 C.F.R. § 3.6 provides that the board "may, in its discretion, stay deportation." It does not, however, require any sort of notice to the petitioner of the reasons for that discretionary decision. This is in contrast with the provisions governing stays by the District Director, which require that "[w]ritten notice of the disposition of the alien's request shall be served upon him and any notice of denial shall include specific reasons therefor." 8 C.F.R. § 243.4.

The regulations do not require any explanation by the BIA of its denial of the stay. In light of the strong policy of deference to administrative agencies' interpretation of regulations,[9] this court must conclude that the BIA acted in accordance with 8 C.F.R.

§ 3.8, and is not required to give a detailed rationale for its decision. As such, the BIA did not abuse its discretion either by denying the request for a stay or by failing to fully explain its reasoning in so doing.

### D. *INS' Failure to Follow Applicable Procedures.*

■ Narayan also claims that the INS failed to follow its usual procedures by arresting him without notice.[10] However, Narayan was given notice in December of 1990 in exactly the form he claims he was entitled to (Administrative Record at 131), and was extended the privilege (not once but twice, by both the IJ and the BIA) of departing the country voluntarily within thirty days. He declined to avail himself of that privilege. Moreover, even had the INS departed from its normal procedures here, INS internal operating procedures do not create substantive rights in aliens. *Mada–Luna v. Fitzpatrick*, 813 F.2d 1006, 1018 (9th Cir.1987); *Romiero de Silva v. Smith*, 773 F.2d 1021, 1024–25 n. 3 (9th Cir.1985). Finally, as Narayan recognizes in his reply brief, his claim that he was somehow prejudiced by lack of notice of a deportation order that was first issued over four years ago is now moot, as he is currently free on bond and able to arrange his affairs prior to departure.

### IV. CONCLUSION

In accordance with the foregoing, it is hereby ordered that:

Narayan's petition for writ of habeas corpus be, and hereby is, DENIED, and;

the order of this court of August 7, 1992, restraining the INS from moving Narayan

---

7. Sama Nandrae Singh, File # A29 236 515.

8. This court does not prejudge the motion to reopen; that motion is for the BIA to decide.

9. *See, e.g., Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("considerable weight accorded to executive department's construction"); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("when the construction of an adminis-

trative regulation rather than a statute is in issue, deference is even more clearly in order").

10. Narayan rather colorfully describes the events as being "brutally grabbed [and] thrown into custody," and likens his treatment to "Nazi Germany." He does not, however, present evidence of any mistreatment, and the sworn declaration of Anthony D. Lazalde, a deportation officer, indicates that the entire arrest and detention was entirely routine, peaceful, and without incident.

from the jurisdiction of this court, be, and hereby is, VACATED.

IT IS SO ORDERED.